Afternoon, go ahead and be seated. This is our last case of the day. It's case number 4-14-0145 in the interest of Derricka M. Let's see, Attorney Hart is here on behalf of the appellant. Attorney Brooks is here on behalf of the appellee. Let's see, that's Hart. Ready to proceed? May it please the Court, Counsel, my name is Katherine Hart and I represent the appellant Derricka M. What is the role of a parent in a juvenile delinquency proceeding? And how is that role impacted by being the alleged victim and the mother of an additional named victim? These questions have arisen in this case in the context of the notice provisions of the Juvenile Court Act and its emphasis on the importance of the presence of a concerned adult for delinquent minors. The legislature of the state of Illinois has found the presence of a parent or guardian at delinquency proceedings so important that they are mandated to be part of the process and are required to be served with notice. They are literally summoned to court. In this case, the state had a duty to provide notice to Derricka's father, which they failed to do. The failure to provide notice was error, as the state has conceded. Yet the state argues that this error was forfeited and does not rise to the level of plain error because Derricka's father would not have changed the outcome of the case. The state's argument fails to recognize two things. First, the absence of Derricka's father meant that Derricka had no adult present whose sole loyalty and concern was for her. The presence of her mother, the only witness against Derricka at her revocation proceedings, could not provide this important role, as she was the state's instrument of prosecution and had obvious concerns for her own safety and the safety of her other children. In Marcus W., this court recognized the great importance that our Supreme Court has placed on a minor having at least one person present during juvenile proceedings whose only loyalty and concern is towards the minor. Derricka did not have that one person. Secondly, the only sentencing options the court was presented with were probation at Derricka's mother's house, a place that the court itself referred to as volatile, or a sentence of prison, which is what Derricka received. The presence of Derricka's father might well have changed the sentencing outcome, as he might have provided an alternate probation placement with either himself or another paternal relative, or he might have advocated inpatient treatment for Derricka's mental health problems. Were the only parent present was at the center of the continuing problems, another concerned adult would have made a difference in the outcome of this case. In the absence of Derricka's father, the court should have appointed a GAL when it became apparent that Derricka's mother was the only adult present to advocate for Derricka's best interests. In delinquency proceedings, the court may appoint a guardian ad litem for the minor whenever it finds that there may be a conflict of interest between the minor and his or her parent, guardian, or legal custodian, or that it is otherwise in the minor's best interest to do so. In Austin M., the Illinois Supreme Court stated the following concerning GALs in delinquency proceedings. When a guardian ad litem is appointed in a delinquency proceeding, it is generally because there is no interested parent or legal guardian to represent the child's best interests. In these situations, the GAL must act in the role of concerned parent, which is often in opposition to the position of defense counsel. This language recognizes the need for a GAL in delinquency proceedings in the absence of an adult capable of fulfilling the role of a concerned parent. In addition, it defines the scope of a GAL's role under these circumstances to act in the role of a concerned parent. Derricka's juvenile delinquency history records an almost constant state of conflict between Derricka and her mother, concluding with Derricka's mother testifying against her at the hearing on the state's petition to revoke probation. At that point, Derricka's mother could not act solely out of concern for Derricka, because Derricka's mother's testimony was the linchpin of the state's case. It's not just that she was not solely concerned with Derricka's best interests, she was actively working against her daughter as an instrument of the state. By way of analogy, a trial court would never allow a GAL to represent a child where the GAL had been the victim of that child's crime. Derricka had two adults in court who were present on her behalf on the day of her probation revocation hearing. Her mother, the alleged victim of the charged battery, who presented evidence against her, and her defense attorney, who could only argue for Derricka's expressed interest. In this case, she only argued for Derricka to be given probation and placed in her mother's home. A GAL might well have argued for placement with Derricka's father, with some other relative, or for inpatient residential treatment, given Derricka's mental health history. None of these other options could have been advocated for by defense counsel if Derricka's only wish was to go home to her mother and brothers. Given the facts of this case, a GAL should have been appointed to represent Derricka's best interests at her probation revocation hearing. Does this court have... Counsel, I was going to ask you, I thought you said the mother testified at the probation revocation hearing. That's correct. The mother testified against Derricka at the probation revocation hearing and was in fact the only witness for the suit. The minor didn't admit? The minor testified, but she, no, she didn't admit. She testified in her defense. This was not an admission. This was a contested revocation. Okay, thank you. Anybody else have any questions? Are you finished, Counsel? I am finished. Thank you. You have a chance on rebuttal. Counsel? May I please support the counsel? My name is Allison Paige Brooks. I represent the people in this case. First of all, the state's response, primary response to the claim that it's plain error not to give notice to the respondent's father is that the trial court's, the error is alleged to be more important in the sentencing context rather than the context of the hearing on the petition to revoke probation. But the emphasis is on the trial court's finding at sentencing, which is that the respondent's behavior was a serious danger to the public, and this was the reason why the trial court imposed the sentence to the Department of Juvenile Justice. So it's a distinguishable situation from Marcus W. where the court in Marcus W. had considered and relied on the lack of adult supervision to sentence the minor in Marcus W. to prison so that if another parent had been given notice and had the ability to show up and was willing to take that minor in Marcus W. home, this court in Marcus W. believed that if there was a reasonable probability that there would have been a different result. However, when the decision is based on the minor's dangerousness to the public and not the lack of adult supervision, it's a different situation in the sense that there is no similar outcome, probability that the outcome may have been different because the trial court was relying on a different ground to impose a sentence of imprisonment. So for that reason, Marcus W. is distinguishable. In this case, the minor did have one parent, the custodial parent, who was given notice and was present. So for that reason, this is not like a case where the minor has no parents at all. And essentially what the respondent is attempting to do is shoehorn this case into the line of cases where the minor has no parents. Wasn't the mother in an adversarial position to the minor in this case? It was in the sense that she was the victim of the battery and that she was called to testify because she was the victim of the battery. But that does not mean that she doesn't love or care for or want to take care of and be willing to accept a placement of the minor. Did she indicate she would accept placement of the minor? At the most recent one? I'm not sure if that was made explicit. She had received the minor placement throughout the case, including after I think the first sentence of imprisonment to the Department of Juvenile Justice, which was vacated and probation was reimposed. So there's no indication I can recall that she somehow refused to have the minor returned to her, even though she was in fact the victim of a battery. These are not easy or simple cases. So a bright line rule, as the respondent appears to advocate, that if a minor is charged with committing a crime against a member of the family, that that somehow means that the parent is no longer interested enough in that minor's welfare as a matter of law, essentially, so that it requires an appointment at the guardian ad litem and requires notice to both parents. Well, it might not be a bright line that we're looking at, because I think you have to look at every case on its own facts. And here you have a case where the trial judge apparently is aware that there is a really chaotic household and a lot of friction between the daughter and the mother. And then the batteries have occurred over time and she's had a probation revoke now three times. So I'm not sure that anybody's trying for a bright line either. I understand that, but the state does not want this court in deciding this case to engage in the sort of bright line analysis that I think that the respondent might have been advocating. The state does agree that this should be decided on its own facts, rather than setting forth a bright line rule that, for example, one of the victims of the battery was a child who the mother was also the parent of, and that somehow creates a conflict of interest, because the mother then, the argument would go by the respondent, is concerned about safety of the family in the home. And that would mean that, according to the respondent, she's no longer concerned solely and has interest solely in protecting the respondent minor's best interest. But that is an inapt analogy to draw that to the cases of per se conflicts of counsel, because the counsel has actually a duty of loyalty to the child and the parent doesn't have that same duty of loyalty in the sense that a counsel, in the context of conflict of interest, in per se conflicts, cannot serve two masters is the rule. And there's no showing here that somehow the mother was being asked to serve as, you know, two masters. So it's not an apt analogy. And the state believes that these cases are more complicated and not conducive to such bright line rules. So here, because it is being raised for the first time on appeal, these arguments have to be analyzed through the context of the plain error rules. And for that reason, it is much more difficult for the respondent to obtain a relief, because their burden is to show that the errors impacted the integrity of the judicial process and undermined the fairness of the proceedings. And so without any strong authority, for example, it has to be clear or obvious error, for example, in the context of an appointment of guardian ad litem. And when the statute 5-610, subsection 1 of the Juvenile Court Act of 1987, says that a court, quote, may appoint a guardian ad litem, giving the court discretion. So the respondent is essentially asking this court to establish a new rule of law in the context of a plain error argument, when plain error requires that an error be clear or obvious under current law. So by advocating a change in the law, they're essentially admitting that the law is currently against them, they want the law to be changed to something else. That's not something this court is permitted to do under plain error rules. I'm not sure I follow you. What's the change in the law they're advocating? That they want this to be mandated. What to be mandated? The appointment of, I'm sorry, Your Honor, appointment of a guardian ad litem, in a case where the parent is not solely concerned or loyal to the child's best interests, that they believe that should be a mandated appointment and abuse of discretion if it's not done so, and apparently automatic reversal if it's not done in a case like this. Is there another problem here? Given that the trial court sentenced the juvenile to an indeterminate sentence in IDOJJ, there would have to have been a finding made that no less restrictive alternative was available. The father was never given notice, doesn't appear to ever have been investigated, in terms of whether or not that was an option in terms of placement. How could the trial court make that finding? Well, the state doesn't see the respondent raising that argument. This court has limited options in terms of deciding to reverse sua sponte on a ground not briefed and argued by the parties. To the extent that would, the limitation being it would have to be a clear, obvious error. The state, because it hasn't been briefed or argued, doesn't have a response prepared to that argument specifically. If you'd like me to answer that, the main alternatives argued here were placement with the mother versus prison. If the mother is not an option, because the minor was, not because the placement was inappropriate, but because the minor was dangerous to the public, then it seems that the father would have not been an appropriate placement either because the minor is still considered dangerous to the public. I think that would be the state's answer to that argument as to why the father's placement would probably, even if he had shown up, could have also been considered inappropriate for the same reasons that the mother's placement was not appropriate. And the state does acknowledge, though, there was an additional element here that the mother's home was considered by the child court to be volatile and not necessarily an ideal placement. And no investigation of the father's home was undertaken because he apparently didn't get notice of the proceedings. So those are perhaps troubling issues for this court, but without that issue having been briefed and argued by the respondent, this court's options to reverse on that ground would be very limited. Ms. Brooks, I want to ask you this. So we've had Monique F., we've had Marcus W., and now we have Derrick M. all out of Champaign County. So when you leave here today, do you call your state's attorney up and say, hey, in each of these cases the judge raised the issue. Do we have service on respondent father? And the answer is no. So we need to get service on the father. Then the court, the case comes up the next time, and nobody's done anything of the sort to me. And everybody forgets about the fact that at the last hearing the father was never served. It is correct that the state has a burden of accomplishing the service, but a lot of times some cooperation is required by the respondent's parents, a family, because the whereabouts may be known by them but not. But that's not the case here, is it? Yeah. We have dad's address. We know that they've talked to dad on the phone because he gave medical consent. So that's not what we have here, is it? Right. But, Your Honor, Justice Pope would refer to other cases. Right. But I'm talking to you now. Is there a system where you communicate back to the state's attorney's office and say, I've briefed this case on appeal. This is another case out of your county where you didn't have service on a respondent parent. And you guys are putting me in a bad position in the appellate court every time I have to report and argue about this. Do you ever do that? No, Your Honor. How does that communicate it back? I don't have the system to. I'm not going to complain to the state's attorney for being put in the position of having to defend this. I mean, I'm just trying to do my job in arguing these cases as they were given to me. But I would be willing, Your Honor, if you direct me to contact the state's attorney and let them know Your Honor is going to do that. What I'm really asking about, is there a system in place in your office, not necessarily that you would call, but a system where when you keep seeing these repeated issues on appeal, that some communication is made. That seems to me to make common sense, that somebody would be calling that office and saying, look, we have a repeated problem about service. And if you can't find the guy or they're not cooperating, you can publish, right? The state's attorney can publish. Right, there could have been notice by publication. Right. So I don't understand why we keep seeing these cases. And it's usually out of one particular county, and that issue isn't getting addressed. I mean, we address it in our opinions, but does the state's attorney read that? It just seems to me your office would be the office that could carry the message back. Well, I assume that the state's attorneys are getting and receiving and reading the opinions, but I cannot speak specifically for that office. Just to answer directly your questions, I'm not aware that we have any established procedure vis-a-vis specific arguments as these, these specific issues to communicate to a county with respect to. But I would be willing to communicate this court's concern about this particular issue to that county. I think that makes a lot of sense, but I don't think I have to order you to do it. It just makes sense, and I think you should. Or there's somebody in your office higher than you. Right, you don't have to order me on, correct? I understand. But I would let them know that I would communicate your concerns, Your Honor, as to this particular issue to that county as being a recurring problem that this court has noticed and has remarked on in other proceedings. We have at least two published opinions on it. And coming up again here in this case. But this court's not going to reverse merely to try to communicate that message. That's not an appropriate use of the plain error rule. It's to try to communicate maybe more strongly a message that this sort of rule has to be complied with. I don't think that's what Justice Polk said. I understand that, Your Honor. But I have seen arguments in defendant's briefs trying to make that point as you request a use of plain error to sort of send a message to trial judges who apparently have not gotten the message of the arguments that I've seen. So for that reason, I'd entertain other questions. But otherwise, I just request this court to affirm. Thank you, Your Honors. And I'd just like to say that I don't think their brief indicated, the appellate defender's brief didn't indicate to me that they were trying to use plain error to send a message either. Not this case, Your Honor. I'm referring to a different case. Thank you. Ms. Hart? Could you start off by answering that question if you know whether or not the mother was willing to accept the minor? My recollection was that she was not. She said something like, get my child help. I can't remember. Do you know? I don't remember the specifics of that last hearing, to be honest with you. I know for certain that she didn't say she was willing to take Derricka. I don't know whether she indicated the opposite. During the course of these proceedings, Derricka was in and out of detention, in and out of Department of Juvenile Justice. There were many times when her mother was not willing to take her back home, and in fact there's an instance cited in my brief of precisely that. That's just one more example of how the outcome quite likely would have been different if notice had been given to the father for him to be present. Right. Likewise, she had a lawyer. Derricka had a lawyer in the trial court. A defense attorney, right?  Why isn't the defense attorney saying to the judge, we don't have service on the father. The father has a right to be here. He's representing her. I can't speak to that as I know. But you could carry the message back, too. I certainly can, Your Honor. I would be happy to do that. Okay, great. Basically, this is an issue of fundamental fairness, and this child had no adult who was solely concerned with her best interest in these proceedings, and she had serious mental health problems. It's quite likely that there could have been another placement. Somebody else could have advocated for a different placement. Derricka just wanted to go home, and that's what her attorney had to advocate for. But somebody else could have advocated for something else, and fundamental fairness requires that this child be given all of the protections of the General Court Act in her probation revocation hearing and her sentencing. We would ask that this court reverse the adjudication sentence, and send it back for a new hearing with proper notice to all parties so that this can proceed with fundamental fairness for all parties. Reverse the most recent revocation? The most recent, yes. That is the subject of this appeal. If this court has no further questions. Okay, I don't see any. Thank you, counsel. You can take the matter under advisement and be in recess.